Edmund General LaCour Jr. is here for the Alabama Attorney General, Paul Dubling is here for the appellants. Well, it's the sheriff who's the appellant. Dubling is here for the And Mr. LaCour, you may begin your argument when you're ready. Thank you, Your Honor. May it please the court, Edmund LaCour on behalf of the appellants. Sexual abuse of children is horrific and is unfortunately hard to detect. Many victims have difficulty even reporting the crimes against them because of feelings of confusion and shame. Children in particular have difficulty finding their voices, particularly when their abuser is someone who occupies a position of control or trust over them. So the state undeniably has an interest in trying to prevent these harms occurring to children, both by punishing those offenders who are caught and by preventing that harm from happening in the first place. Thus, the legislature enacted the provision at issue here, which bars anyone convicted of a sex crime involving a child from later residing with or having overnight access to a child. Let me tell you, first of all, I don't think anybody could take issue with the notion that a state has a right to protect its children from sexual abuse, and sexual abuse is obviously horrific, and that it can be difficult to know who is going to perpetrate sexual abuse. That said, this statute does seem to be both over-inclusive and under-inclusive, if I'm understanding it correctly. Maybe I'm not, so you can help me out with that. But it seems like there's no exit door from this. In other words, you can't have a proceeding to be found that, to have it found that, you know, this doesn't apply to you. And so here's health, to take an obvious example. It's over-inclusive. It applies to, for example, the 19-year-old who, you know, in a bad display of judgment, had a relationship with a 16-year-old and sexted back and forth or whatever. Now that person can never stay overnight at the same place as his children, for example. That's one. It also, I think it applies also to sexual relations between minors. So even though there wasn't what I think, you know, we certainly wouldn't want to encourage that, but it wasn't a situation where we're talking about the kind of child abuse that I think we all agree is better off avoided. Those individuals have no way out from under this particular statute. And then it's under-inclusive in that, although it doesn't allow a parent to stay overnight with a child, it allows a parent, no matter how bad the sexual conduct or misconduct would have been and abuse in the past might have been, to spend time alone with the child. So it just seems like, although the goal of the state here might have been laudatory, the execution of it just has some constitutional problems here, it seems to me. So I'll start with under-inclusiveness and then move to the potential over-inclusiveness. I think under-inclusiveness, the concerns are a bit overblown in that if the parent who has offended is not allowed to reside with the child, then that means the child is residing with the fit parent or some other fit guardian. And that person will be able to serve in a gatekeeping function. Now the time when the mother might not be able to serve as a gatekeeper would be perhaps when she's asleep, and hence the overnight visit element of this restriction. So I think the fact that it's tailored to try to provide that protection to children when they are most likely to not have their guardian there to serve that gatekeeping role is actually a point in our favor. Now when it comes to the potential over-inclusiveness, I think this was the fundamental error of the district court made, that while strict scrutiny is demanding and requires narrow tailoring, it doesn't require perfect tailoring. That's true, but there are so many ways that this could have been tailored better to avoid this problem. For example, it could have been all contact offenses, or it could have had an escape valve where there could be a hearing where you could have an opportunity to contest the application of this particular statute to you. And if you showed that you didn't present a danger to the child, you could have an opportunity to spend overnight. I mean, there are different ways that you could have tailored this statute, or more narrowly tailored, and not to make it perfect, but to make it more narrowly tailored, so that it didn't apply to every single so-called sex offense, right, minor sex offense, without any escape valve. Well, Your Honor, that's going to be true for every single legislative rule that there is. If you look at footnote 19 of Mr. Henry's brief, he offers six or seven different things that he would suggest to further tailor. You could always, I guess, make anything a little more narrow, but I think if you look at other examples where the government has satisfied strict scrutiny, I think that can be instructive. So, the famous case of Buckley v. Vallejo, which upheld $1,000 contribution limits to federal candidates. I mean, that was for political speech being limited, but the court said, it's very important that we fight quid pro quo corruption, and it's also very difficult to detect that sort of corruption. And so, the fact that the government could punish somebody for bribery after the fact didn't render the campaign contribution limits somehow not narrowly tailored. That prophylaxis was important in that instance, and we think we're dealing with a similar set of problems here, where some sort of prophylactic approach is necessary. Now, going back to Buckley, the $1,000 limit, you could always imagine a hypothetical where somebody wants to give $2,000 and there's no concern whatsoever with corruption. So, if a grandmother wants to give her grandson who's running for Congress $2,000, I don't think anyone's going to think that she's buying influence. But the fact you can come up with that hypothetical doesn't render the statute no longer narrowly tailored. is being furthered during the daytime as opposed to at night? Yes, Your Honor. As I was mentioning to Judge Rosenbaum, the overnight protection, that's going to be the time when the gatekeeping parent who is allowed to reside with the child Right. I understand yours, but I also understood your response to assume that there would be the fit parent available during the time, which generally is working hours. So, let's say that the child is not otherwise accompanied or supervised by another adult. How does this provision in the statute protect a child during those daytime hours from being assaulted? Presumably, the fit parent is going to serve. Okay. Taking away presumption, taking away assumptions, how does your statute protect a child during those daytime hours from being abused? Well, this requires a little bit of common sense. Most kids during daylight hours are going to be at school. If they're not at school, they're going to be with their parent. So, the answer is it doesn't. It doesn't provide the same level of guarantee during the daytime that it purports to provide at night. Well, I think it does because that sex offender parent is not living at the house. But the problem is, you know, it's sort of in the reality of how, you know, with two parents working in that situation, if the law allows for the parent who is subject to this particular law to be with the child during the day, are that probably at some point that child is going to be alone with the parent who is subject to the law. I mean, I don't think we can really presume. I don't think it's very realistic, honestly, to presume that the parent who is subject to this law will never be alone with a child during daylight hours. Well, we're still providing significant protection at those times where the child is going to be most likely at risk, which is those times when the gatekeeping parent is most likely to not be around to serve that role. And so, I think that's actually a point in our favor, that it is a targeted protection. But there's more to say on this. And I just want to also clarify, I mean, we're talking in the strict scrutiny context, so I just want to agree that it is the State's concession that Mr. Henry's fundamental right to take care of and have custody of his child is at stake here. We have arguments. I think we meet strict scrutiny, but I think there are good arguments as well that we don't even get to strict scrutiny because these crimes are the sorts of things that can remove a presumption of fitness from a parent. And if that parent is not presumptively fit, the State has some authority to regulate. But with only two minutes left, I want to touch just briefly on the over breadth of this injunction. So even if you accept that Mr. Henry has a strong as applied challenge for himself, or even as to all category of child pornography offenders, D4 applies to all manner of sex abuse crimes, including, as the district court said, the worst of the worst. It deals with child rapists, with child traffickers. And I think that facial analysis that the court was supposed to go through should have looked at each of these categories of offenders, because even Mr. Henry and his experts will admit that the recidivism rates for certain types of offenders are higher, at least based on the studies that they've cited, than they are for maybe the child pornography offender. So the court need to grapple with whether or not a conviction for child rape, for example, is a sufficiently good predictor to protect children from having to live with child rapists. But why isn't the answer then that it's not narrowly tailored to address that situation, as opposed to it's so overly broad that in order to get to the horrible situations, right, it over arches onto all of these other situations where it's, you know, there's not a real likelihood of an issue. Well, I think it's an actual question that we should go to trial law and not resolve on summary judgment. That if we could show that every child rapist is an overwhelmingly high risk of harming a child, or at least a sufficiently high percentage of the child rapists, then I think that's a good answer. But why not just apply it to child rapists in that situation, right? I think that's as far as the injunction should go and no further. It shouldn't go to prohibit us from applying this law to those categories of people who are definitely going to be at high risk. And then finally, this is a parental rights claim. The D4 injunction entered by the court would extend to stepbrothers and grandparents who have no parental right. If you look at the complaint of the briefing and the district court's order. Let me ask you this, though, because I do think that you have a stronger argument that the statute may be facially, that the court may have erred in holding that the statute is facially unvalid. And so we've been focusing on whether or not the statute is unconstitutional as applied. And when I look at the district court's order, it seems like what the district court in this case was most concerned about was the fact that there's a lifetime ban. That there's a lifetime ban and there's no avenue to challenge the ban. And so why isn't that the strongest argument in support of the fact that the statute is unconstitutional as applied? There's no avenue to challenge the ban and it's a lifetime ban. Well, we have a study in the record showing that for convicted child molesters, this is a 30 year follow up with them, that 40 percent will later be arrested or convicted for another child abuse crime and 25 percent of those people will be arrested after 10 years has gone on. So we think that there is evidence to apply this as a lifetime ban. And again, it's only until the child is 18. So in that way, it's tailored as well. Once the child is older and can stick up for himself or herself, then the ban is not as much of an issue. But at a minimum, this court needs to reverse to the extent that the injunction applies to non-parents. There's no basis whatsoever to apply the injunction and prohibit us from applying D4 to people who have no parental right at all. Mr. Henry brought only a parental rights challenge. He did not bring a stepbrother's rights challenge. And the stepbrother who raped a child has no parental right to sleep down the hall from his five year old stepsister. So at a minimum, the injunction needs to be reversed on that ground and tailored on that ground. All right. You've reserved some time, Mr. LaCour. We'll hear from Mr. Gubling. Yes, Your Honor. Thank you. And may it please the court. The law in this area is well established and I'm not even sure fairly. Well, I'm having trouble figuring out with regard to the claim that the statute is facially invalid, how the Salerno test is met, that no set of circumstances test is met. Yes, Your Honor. As the district court properly explained and as this court has previously held, in this context, Salerno does not mean that statutes are no longer subject to strict scrutiny. In the 35 years since Salerno was decided, no court has taken that language and said that the existence of a hypothetically valid application of the statute would relieve the state of its burden under the means ends analysis of strict scrutiny. Never. Not in Salerno itself. Not in Washington State v. Grange. But there are circumstances under which the act would be valid though, right? I disagree, Your Honor. In every case, why can't there be a potential if nothing else? What if the parent is convicted of raping the child? That would be covered by another section of the statute, Your Honor. If a crime is committed against that parent's own child, then other sections of the statute would kick in. In this case, what we're saying is, no matter what, and I think we need to get away from looking at these as crimes, right? And think of a horrific crime, fair enough. But what we're actually saying is, meeting these elements, right? Rape of a child, 16-year-old having penetrative sex with someone under the age of 12. In every circumstance, regardless, 50 years later, no matter what has happened in the interim, we're still saying that that 16-year-old is not only presumptively, but conclusively so dangerous that they can never reside with their own child. Same with child sex trafficking, Your Honor. It is, when we think of it, a horrific crime. But in every case, there are going to be circumstances where it's not what it looks like. Only parental rights are considered fundamental rights worthy of due process protection, right? In this statute, the statute applies to non-parents, grandparents, uncles, aunts. Which the Supreme Court has recognized also has fundamental rights of cohabitation. But what do you rely on for that? City of East Cleveland, Your Honor. But the Supreme Court hasn't said that the fundamental right of parents to direct the care, custody, and control of their children is a fundamental right that is shared by non-parental figures. In the context of the 14th Amendment right to the care, custody, and control of one's parents, the Supreme Court, as early as 1923, said the right to establish a home and raise a family. Separately, and as we raised at the district court level, there is a First Amendment right of association to cohabitate with one's relatives that the Supreme Court has also recognized. But there's not a 14th Amendment right to that, really. I mean, it's not the same right. It's a different right. Your client invoked the parent's fundamental right to direct the care, custody, and control of his children. Isn't that what you did? We do it both ways. In the First Amendment, I understand. But under the 14th Amendment, that's the right you invoked, right? Yes, Your Honor. Okay. And you would agree with me that the Supreme Court has not said that other family members have that exact same right, wouldn't you? Correct, Your Honor. Non-parents. The Supreme Court has not said that non-parents have a fundamental right to the care, custody, and control of their children. But we're on strict scrutiny analysis, and the law is very clear. This statute is subject to strict scrutiny. It is the government's burden to prove that it is narrowly tailored. If the government cannot narrowly — But it's only the government's burden to prove that it's narrowly tailored, and we're only on strict scrutiny if this involves a fundamental right. I mean, if it doesn't involve a fundamental right, then we're not on strict scrutiny. In one sense, yes, Your Honor. But if I may point out, the remedy for a statute that fails strict scrutiny is facial invalidation of the statute. In this case, it's not really the statute. It's the legislature that needs to go back and decide how to handle this. It's also a little bit of a bootless exercise in this case because the First Amendment was put at play here. And the analysis that would apply to the First Amendment claim brought by a non-parent would apply here. So this is separate, for instance, from ASMCE, the Fourth Amendment case, where the court said we're going to narrow the injunction based on the categories of people. Because there, the court was looking at the Fourth Amendment saying, okay, with regard to these categories of municipal employees, a search would be reasonable. It wasn't strict scrutiny. There's no precedent for the idea that the court should, in a strict scrutiny case, go through and break up the pieces of the statute and say, well, this is valid as applied here, not valid as applied here, and break it up. That's for the legislature's job. At the end of the day, this statute fails strict scrutiny. Because it fails strict scrutiny, it's facially invalid. The legislature can go back and try to parse it out and maybe it's invalid. But maybe it's facially invalid if it's facially invalid. Maybe it's facially invalid only as to parents. To which I respond, Your Honor, but let's not forget that the analysis would be the same and there are fundamental rights at issue. The Supreme Court has clearly signaled that the right of intimate association, which is covered by the First Amendment, has substantial overlap. The Supreme Court has also said that you can have a fundamental right stripped away if you have been convicted of a felony. We know that with firearms. We've been dealing with that in a number of cases. We know that for sure when it comes to voting. In some cases, it applies if you want to run for office, not in all circumstances as we now know. So to me, it does seem like there is room if someone has been convicted of a crime involving children for that fundamental right to be stripped away. Very different circumstances, Your Honor. In the Taylor case in the 70s upholding bans on felons voting, the court specifically said that it was grounding its position in the textual sanction found in Section 2 of the 14th Amendment. In other words, the court said bans on felons voting are constitutional because the Constitution allows for that for its text. Here, the right belongs to the people. With regard to the recent Rahimi and Bruin decisions, the court specifically says that Second Amendment analysis is different. It very specifically says in Rahimi and the Second Amendment, we don't do this means-ends analysis. We do in this case. That's the difference, Your Honor. There is no sanction in Supreme Court precedent for taking away a fundamental right, a family of First Amendment value based on status of a felon. The two situations where it's happened are in the Second Amendment where the court specifically said we're doing a completely different type of analysis. And in the voting rights context where the court specifically said because this has sanctioned in the text of the Constitution, we're going to find the ban valid or at least constitutional. And in Mr. Henry's sentencing order, is it correct that the court did not terminate his parental rights? Well, that's exactly right, Your Honor. The court specifically said in a sentencing order, Mr. Henry should not have contact with minor children. I would point out that is for a limited time, right? That's for the period of a supervised release. But when the trial court, who knew all the facts and circumstances about Mr. Henry, considered the issue, he specifically accepted Mr. Henry's own children. So the individualized assessment that it sounds like you're also advocating for, at least for purposes of the as-applied challenge, but maybe even for the facial, is that the sentencing court, at least in the first instance or at some instance, is the one to make that individualized assessment and that should trump or preempt this D4 provision? I'm just wondering how it would work if you're ultimately successful that the statute can stand except that there has to be this individualized assessment. How would that work? Well, it is our position that under a standing deal in Wayne, certainly a hearing would be required before this. The difference would be, of course, that the court is considering terms of supervised release, which one has an individualized hearing, two has an opportunity to seek changes, and has typically a time limit. But even if the court were deciding that this is supervised relief for life, under the statute, someone could always come back and attempt to show changed circumstances to change it. So I don't see that there's a conflict because the court's jurisdiction only lasts so long as the person is under supervised release, whereas this ban is purporting to go for life. I think at the end of the day, that's it, Your Honors. In some sense, I believe this is a very straightforward case. Mr. Henry has a right to live with his child. Can that right be abrogated under certain circumstances? Of course, but any constitutional right is subject to limitation when the limitation meets the relevant constitutional test. But in this case, a lifetime, non-appealable ban based solely on the fact of conviction is simply not narrowly tailored. There's no reason to think that in every circumstance, mere fact of conviction, whatever the conviction, no matter what has happened, justifies this severe abrogation of a fundamental constitutional right. And this can be solved and I believe has to be solved under the Constitution by giving people a hearing prior to the taking away of this right. And this law is unconstitutional in all its applications. The Salerno test is not a test. It's a result, as this court has held in Club Madonna. But in every case, the taking away of a fundamental right for life without possibility of appeal, no matter what has happened, based solely on committing a crime that meets the elements of a criminal statute, is overbroad. Because in every case, it could be narrowed by simply giving the person a hearing. I encourage this court, and I ask this court, not to do the work of parsing this statute for scrutiny. Strict scrutiny. The statute fails the narrow tailoring test. It is facially invalid. There are reasons, certainly, to be very concerned that it is separately unconstitutional under the First Amendment for every person who is subject to it, regardless of their status as a parent or not. But that's for the legislature to decide. It's for the legislature to go back and attempt to craft a statute that it believes meets its needs that fits the constitutional framework to which it is subject to scrutiny. That is the role of the courts and the role of the legislature. I encourage this court to simply follow the simple logic of this case. Intentions of fundamental right, subject to strict scrutiny, is not narrowly tailored, is therefore facially invalid. I also ask this court to please dissolve the district court's stay and to allow Mr. Henry to go home. There is a lot of dispute about the evidence in this case. But it's not material because the fact is that a conviction does not tell you the information you need to know about an individual. Not five years later, not 10 years later, not 20 years later, not 50 years later. And that's what the state's doing. They're saying one fact about a person, one simple fact, is determinative and conclusive for the rest of their life about something. That's not how this works. And it's not reality. Even in its briefs, if you notice, the state can't help itself. When they're talking about Mr. Henry, they say Mr. Henry was convicted of possession of child porn. And he was blah, blah, blah, blah, blah, blah, blah, blah. Right? And they just can't stop. Because if you just say Mr. Henry was convicted of child porn and you ask the question, should he be allowed to live with his kid? Well, you say, well, I need more information. Of course you need more information. What was the content of the child porn? What has he done since then? Has he been through rehabilitation? What is the sex of the child? All of that matters. And it matters in every case. And so for the state to conclusively determine that someone can never be a fit parent based on a single fact in their history forever is wrong. It's just not constitutional. And that's where we're at. I appreciate the court's time. I'm happy to answer any other questions. But I ask this court to uphold the district court's ruling because it got it exactly right. Thank you. All right. Thank you, Mr. Dubling and Mr. LaCour. You've reserved some time for rebuttal. And I wonder during the time that you have left for rebuttal if you'll focus on the claim that the statute is facially unconstitutional. And he makes the argument that if it doesn't meet street scrutiny, then, I mean, unless I'm misinterpreting his argument, the Salermo test is out the window. What's your response to that? I keep inviting you to commit the same error that the Fifth Circuit committed in Rahimi where the Supreme Court explained that the court in adjudicating a facial challenge should look at those situations where the statute is most likely to be constitutional, not look at hypotheticals where it's most likely to present a problem. And so even if you don't think that the fact of a child pornography conviction is enough for the—to make this predictive judgment about the risk of an offender towards the child, let's think about the situations where that fact of conviction might be sufficient to impose the sorts of restrictions D-4 does, like the child trafficker or the child rapist. And then we're into narrow tailoring. And yes, you could still imagine that there might be some child trafficker who ends up being a really great guy at the end of the day. But that is not enough to invalidate the entire legislative judgment unless the evidence comes back and shows that this prediction that the legislature has made is off more often than not. Because, again, narrow tailoring is required, but perfect tailoring is not. I'm understanding his argument to be that in any case it is unconstitutional in every case because in order for it to be constitutional you'd need to have some kind of escape valve, right? You need to be able to have somebody test the presumption, or in this case the conclusion, that they could never be with their own child ever for the rest of their life. Right. And I think that that is the test for strict scrutiny. Going back to Buckley, he could have set up a situation for the grandmother valve so the grandmother could give $2,000 to her grandson instead of $1,000. But the fact that he didn't have that individualized hearing in the campaign finance context didn't render that statute invalid. I think the same thing is true here. Now, if the FIT was really poor, if we just said anyone who is born on a Tuesday doesn't get to reside with their children, then it's going to fail, even if we happen upon someone who really shouldn't be living with their children. But we think that the FIT is quite tailored here because 55% of child pornography offenders will self-report some contact offense against a child, but only 12% of those contact offenses actually show up in the official records. I mean, it also depends on which evidence you're looking at. Correct, and I think if there are still questions about that, that's a reason to go to trial, not to resolve this on summary judgment. A quick word about this either First Amendment association right or stepbrother's right. In the city of East Cleveland, it's a plurality decision. It's not clear that it would even apply here as a zoning ordinance, not some sort of restriction on people who might be a particular risk to children. But even if they were right about that constitutional theory, it's not one that was ever even presented to the district court. So the court did not have authority to go beyond the parental rights context and enter an injunction that extends to non-parents. So at least as far as that goes, the court should reverse. All right, I think we have your arguments. Thank you, counsel, and the court will be in recess for 15 minutes. All rise.